## Jane Yanaway v. Mary E. Strockbine et al.

1.   ANTE-NUPTIAL AGREEMENTS—*Existence of, etc.*—The court discusses the evidence and finds that no ante-nuptial agreement existed between appellant and her deceased husband.

Creditor's Bill.—Appeal from the Circuit Court of Clark County; the Hon. FERDINAND BOOKWALTER, Judge, presiding.   Heard in this court at the November term, 1896.   Affirmed.   Opinion filed February 25, 1897.

GRAHAM & TIBBS, attorneys for appellant.

ROBERT E. HAMILL, attorney for appellees.

MR. JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

This was a bill in chancery by the appellees as creditors af Israel Yanaway, deceased, to subject certain real estate to the payment of his debts. There was a decree according to the prayer of the bill from which the defendant appealed. The appellant is the widow of said Israel Yanaway, whom she married some two or three years before his death, he being at the time of the marriage nearly eighty-three years of age. She claims that the property in question was bought after their marriage, with certain promissory notes which he had given her before marriage and in consideration thereof.

He had given the bulk of his property to his children by a former wife—who died only a short time (a few months) before he married appellant—retaining a small quantity of land, and a number of promissory notes, the exact amount of which is uncertain, ranging somewhere from six to ten thousand dollars.

Soon after his first wife died he became dissatisfied with his condition, wanted a home of his own, and it is claimed, as an inducement to the appellant to marry him, proposed to give her all the property he had left.

She wanted to see the notes, and as is shown, he brought a package of notes on sundry persons, the aggregate amount being unknown to the witnesses, and placed them in her hands. She gave them back to him for safe keeping as she claims. Shortly after, they were married, and a few months later the real estate in question was purchased and occupied by them as a residence until his death. She still occupies it as her homestead. The deed was made to "Israel Yanaway and Jane Yanaway, his wife, and after their death to Jane Yanaway's heirs." The price paid for the property was $1,500, of which $100 was paid in cash and the ballance in promissory notes held by him, and which he in-

dorsed to the vendor. For some years he had kept his
notes in a package or box at a bank and was in the habit of
going there from time to time as he had occasion.   He con-
tinued in this way after his marriage to appellant until a
short time before his death, when he went to the bank with
her and indorsed all the notes remaining, to her and the
package was left there, subject to her order.   Just before
his death he made his will, by which he gave her all his
estate real and personal, which will was duly probated.   We
shall not undertake to state the evidence, as it is quite volu-
minous, but merely the conclusion we have reached.

We are impressed with the view that there was no ante-
nuptial agreement based upon the consideration of marriage
and subsequently carried out, by which she became the
owner of the notes given for the purchase of the property
in question.   There is no pretense that there was an agree-
ment in writing as required by the statute of frauds, but
merely a verbal agreement afterward executed.

Conceding, without discussing or deciding, that such a
verbal agreement may be executed after marriage, to the
detriment of subsequent creditors, and upheld, we think the
evidence fails to establish the position taken in that behalf
by appellant.

Mr. Yanaway seemed to have the intention merely of
making his last wife the sole heir of what he retained after
the division he had made with his children.   In various
forms of expression, at various times and to various persons
before and after this marriage, he stated that what he had
was for his personal benefit, to provide him with a home
and all the comfort and attention his condition required and
what was left should go to his wife, who was expected to
care for him and see that he had such comfort and attention.

It does not appear that he proposed to give her his prop-
erty in consideration of marriage merely, and there was no
thought of an ante-nuptial, provision in the strict or legal
sense of the term.

He retained the control until very near the last, of his
notes, never conveyed her his real estate, and as though to

effectuate a consistent purpose entertained from the beginning, he finally made his will, by which he gave her what remained, both real and personal.

Taking isolated expressions as reported by several of the witnesses, we might easily reach the conclusion claimed by appellant that there was a verbal ante-nuptial agreement in consideration of marriage subsequently executed, but considering the whole evidence, in the light of his actions as well as hers, we are led to the conclusion stated. Adopting this view, the property in dispute is to be treated as though conveyed to him in fee. The decree was so predicated and we think it should be affirmed.